IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| Mary A. Yohe, | ) |
|---|---|
| Plaintiff, | ) |
| -vs- | ) Civil Action No. 07-301 |
| Joanne B. Barnhart, Commissioner of Social Security | ) |
| Defendant. | ) |

AMBROSE, Chief District Judge.

## SYNOPSIS

Before the Court are Cross-Motions for Summary Judgment. (Docket Nos. 7 and 9). Both parties filed briefs supporting their respective motions. (Docket Nos. 8 and 10). Upon analysis and consideration of each submission, and as set forth in my Opinion below, I am denying the Plaintiff's Motion for Summary Judgment (Docket No. 7) and am granting Defendant's Motion for Summary Judgment (Docket No. 9).

## OPINION AND ORDER OF COURT

### I. Procedural Background

Plaintiff filed her action under 42 U.S.C. §405(g) and §1383(c) seeking judicial review of the final decision of the Social Security Commissioner ("Commissioner") denying her application for disability insurance benefits ("DIB") and supplemental social security income ("SSI") under the Social Security Act ("Act"). On April 7, 2004, Plaintiff filed her application for DIB and SSI,

alleging disability beginning December 1, 2003 as a result of physical and mental impairments. (R. 42-44, 299-302). After a denial of her claim, Plaintiff timely requested a hearing. (R. 27-37, 303-309). During the February 2, 2006 hearing, the Administrative Law Judge ("ALJ") took testimony from Francis Kinley, an impartial vocational expert, and from Plaintiff, who was represented by counsel. (R. 310-354). On June 28, 2006, the ALJ found Plaintiff was not disabled. (R. 11-19). In January of 2007, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision final. (R. 4-6). Plaintiff filed this action seeking relief from the ALJ's decision and the parties filed Cross-Motions for Summary Judgment.

## II. Standard of Review

When reviewing a decision denying DIB and SSI, the District Court's role is limited to determining whether substantial evidence exists in the record to support the ALJ's findings of fact. *Burns v. Barnhart,* 312 F.3d 113, 118 (3d Cir. 2002). Substantial evidence is defined as "more than mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Additionally, if the ALJ's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); *Richardson,* 402 U.S. at 390. A district court cannot conduct a *de novo* review of the Commissioner's decision nor re-weigh evidence of record. *Palmer v. Apfel*, 995 F.Supp. 549, 552 (E.D. Pa. 1998). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See*, 5 U.S.C. §706.

To be eligible for social security benefits under the Act, a claimant must demonstrate that she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last

2

for a continuous period of at least 12 months. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986).

The ALJ must utilize a five-step sequential analysis when evaluating the disability status of each claimant. 20 C.F.R. §404.1520. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., pt. 404 subpt. P., appx. 1; (4) whether the claimant's impairments prevent her from performing her past relevant work; and (5) if the claimant is incapable of performing her past relevant work, whether she can perform any other work which exists in the national economy. 20 C.F.R. §404.1520(a)(4).

### III. Discussion

In denying Plaintiff benefits, the ALJ found as fact: (1) Plaintiff had not engaged in substantial gainful employment at any time relevant to the decision; (2) Plaintiff had several severe impairments, namely: chronic obstructive pulmonary disease with asthma and emphysema, depression, anxiety, Barrett's syndrome, and costochondral cartilage tenderness; (3) none of Plaintiff's impairments or combination of impairments met or medically equaled one of the listed impairments in 20 C.F.R., pt. 404, subpt. P, appx. 1; (4) Plaintiff was able to perform some past relevant work; and (5) Plaintiff could perform a number of light duty jobs that exist in the national economy. (R. 15-17).

Plaintiff primarily challenges the ALJ's decision with respect to steps four and five of the sequential analysis. (Docket No. 8, pp.12-15). With respect to step five, Plaintiff argues that the ALJ erroneously disregarded the medical opinions of Dr. Julie Uran, Dr. Robert Eisler, and

3

Nallathambi Medical Associates. (Docket No. 8, pp. 12-14). With respect to step four, Plaintiff argues that if the ALJ had not erroneously disregarded some of Dr. Eisler's medical opinions, her impairments would have met or exceeded the impairment listing for a major depressive disorder. In addition, Plaintiff alleges the ALJ improperly disregarded testimony from the vocational expert and improperly determined Plaintiff's residual functional capacity. Finally, Plaintiff alleges she is entitled to a reversal of the ALJ's decision because new evidence exists which caused the Social Security Administration to award Plaintiff disability benefits. I will address each argument in turn.

**A. Step Five of the Sequential Analysis**

The ALJ must consider and weigh "every medical opinion" received. 20 C.F.R. §404.1527(d). Generally, the ALJ should give more weight to a treating physician's opinion. 20 C.F.R. §404.1527(d)(2). A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over time. *Morales v. Apfel,* 225 F.3d 310, 317 (3d Cir. 2000). A treating physician's opinion receives controlling weight only if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence" in the record. 20 C.F.R. §404.1527(d)(2). The ALJ must also weigh the relative worth of a treating physician's report against the other reports submitted by other physicians who have examined the claimant. *Adorno v. Shalala,* 40 F.3d 43, 48 (3d Cir. 1994). Thus, the ALJ is not required to give the treating physician's opinion controlling weight. *Morales,* 225 F.3d at 317.

A "treating physician" is defined as the claimant's "own physician, psychologist or other acceptable medical source who provides [the claimant] with medical treatment or evaluation and

who has, or has had, an ongoing medical relationship with [the claimant]." 20 C.F.R. §404.1502. An "ongoing medical relationship" means the claimant sees the medical professional on a frequent basis consistent with the accepted medical practice for the type of treatment she receives. *Ibid*.

Under the facts of the case before me, during the time period in question, Drs. Uran and Eisler each provided a single consultative evaluation of Plaintiff, and therefore, they are not "treating physicians" as defined by the Act.[1] 20 C.F.R. §404.1502; *see also, Corley v. Barnhart*, 102 Fed. Appx. 752, 754 (3d Cir. 2004) (consultive examiner who examines claimant one time is not a "treating physician"). Since neither doctor can be considered a treating physician, the ALJ was under no obligation to give their testimony controlling weight. The ALJ clearly considered and weighed both of these medical opinions in his decision and I find his credibility determinations related to their medical opinions to be supported by substantial evidence. (R. 17, 19).

Unlike Drs. Uran and Eisler, Nallathambi Medical Associates provided Plaintiff with on-going medical treatment for her various impairments and can be considered one of Plaintiff's "treating physicians." (R. 131-213, 252-293). Plaintiff argues the ALJ ignored the opinions of Nallathambi Medical Associates regarding Plaintiff's mental impairments. I disagree.

The ALJ found that Plaintiff's impairments included depression and anxiety. (R. 15). However, he determined these mental impairments only imposed moderate limitations on her. (R. 16). The ALJ also noted that Plaintiff was never psychiatrically hospitalized nor received professional mental health treatment. (R. 17).

The record shows that when the ALJ asked Plaintiff during the hearing whether she was "seeing

---

[1] Dr. Uran performed an evaluation and wrote a report at the request of the Social Security Administration, while Dr. Eisler did the same in response to a request from Plaintiff's attorney. (R. 217-225, 294-298).

5

anyone for [her] mental health," she admitted that she was not seeing anyone because Dr. Nallathambi had not recommended that course of action to her. (R. 331). She said she expected Dr. Nallathambi to make that sort of recommendation at some point in the future because he had prescribed Alzheimer's medication for her. (R. 331-332).

A review of the medical records from Nallathambi Medical Associates, shows that Plaintiff intermittently complained from 2003 to 2005 about feeling anxious, depressed, and/or forgetful and she received medications for these symptoms. (R. 135, 145, 148-149, 152, 269, 271, 275, 279, 286, and 290). The Nallathambi records clearly indicate that Plaintiff reported relief from some of her mental health symptoms with certain medications and those medications were then refilled. (R. 145, 148, 269, 271, 275). Moreover, Nallathambi Medical Associates also ordered objective testing (such as an MRI of the brain) to support a working diagnosis of early dementia, but this test was negative. (R. 290-291). Finally, the Nallathambi records note that Plaintiff reported that she stopped working due to an increase in her breathing problems and not because of any one or more of her mental impairments. (R. 137).

Based on my review of the record as whole, I find substantial evidence to support the ALJ's opinion that Plaintiff suffers from mental impairments but these mental impairments only impose moderate limitations on her. Substantial evidence exists in support of his credibility findings related to Drs. Uran, Eisler, and Nallathambi Medical Associates.

**B. Step Four of the Sequential Analysis**

Dr. Eisler's opinions form the foundation of Plaintiff's argument suggesting she meets or exceeds the impairment listing for a major depressive disorder. Plaintiff claims the ALJ erroneously disregarded Dr. Eisler's medical opinions in this regard. (Docket no. 8, pp. 14-15).

The ALJ found Plaintiff's statements concerning the intensity, duration, and limiting effects of her symptoms to be not entirely credible. (R. 16). He also determined that Dr. Eisler's report was largely based on Plaintiff's own self-reported symptoms which he had already found to be "not entirely credible." (R. 19, 294-298). Dr. Eisler's opinions were not entitled to the deference given to a treating physician's opinions since he only treated the Plaintiff once. Given my review of the case record as a whole, I find substantial evidence in the record to support the ALJ's determination related to the extent of Plaintiff's mental health impairments.

**C. Vocational Expert Testimony and Plaintiff's Residual Functional Capacity**

Plaintiff claims the ALJ improperly disregarded the vocational expert's testimony in response to hypothetical questions based upon Drs. Uran's and Eisler's reports. I agree with the ALJ, who specifically stated that any hypothetical questions based on Dr. Eisler's report were not relevant since his report was not credible. Plaintiff also argues that the ALJ erroneously ignored a hypothetical question asked of the vocational expert based on Dr. Uran's opinion that Plaintiff could not respond to changes in the work place. (Docket no. 8, p.16). Dr. Uran's records indicate that Plaintiff would have "marked difficulty" in responding to changes in the work place. (R. 221). Thus, I find the ALJ did not err by ignoring a hypothetical question which exaggerated Dr. Uran's opinion.

In addition, Plaintiff argues that based on her own testimony and the responses she wrote on her daily activities form, the ALJ erred in determining she could perform light work. In determining Plaintiff's residual functional capacity, the ALJ noted that he considered "all symptoms, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence...based on 20 CFR §404.1527 and §416.927...". (R. 16). The ALJ also found that

7

Plaintiff's statements concerning the intensity, duration, and limiting effects of her symptoms were not entirely credible. (R. 16). This credibility finding is based on the inconsistency between Plaintiff's testimony and various medical reports. (R. 16). *See*, *Burns v. Barnhart*, 312 F.3d 113, 130 (3d Cir. 2002) (an ALJ may reject testimony of subjective complaints where the testimony is not consistent with medical evidence). Thus, I find the ALJ's decision is based on substantial evidence of record.

Additionally, the Plaintiff asserts that since the ALJ found that she had impairments, he erred in finding that she had a residual capacity to perform light work. (R. 17). Plaintiff can be impaired yet still capable of engaging in substantial gainful employment. A claimant's "residual functional capacity" is what she can do despite the limitations caused by her impairments. *Boone v. Barnhart,* 353 F.3d 203, 205 (3d Cir. 2003). Again, I find substantial evidence supports the ALJ's conclusion.

**D. Reversal based on a Subsequent Determination**

A remand for new trial is appropriate under these circumstances:

> The court may ... at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]

42 U.S.C. § 405(g). The Third Circuit elaborated on this standard in *Szubak v. Secretary of Health and Human Services*, 745 F.2d 831 (3d Cir. 1984), by stating:

> ... the evidence must first be "new" and not merely cumulative of what is in the record. ... Second, the evidence must be "material;"... An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition. Finally, the claimant must demonstrate good cause for not having incorporated the new evidence into the administrative record.

*Szubak,* 745 F.2d at 833 (citations omitted).

Plaintiff stated in her brief that subsequent to the decision of the Appeals Council, the Social Security Administration found Plaintiff eligible for disability benefits. Plaintiff explained that "[a]dditional medical documents ... were prepared subsequent to the decision of the Appeals Council." (Docket no. 8, p.19). She also stated these medical records "did not exist at the time of the earlier decision...". (Docket no. 8, p. 19).

The Third Circuit makes it clear that new evidence is only "material" if it relates to the time period for which benefits were denied, and that it does not consider evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition to be "new" evidence. *Szubak,*745 F.2d at 833; *see also, Raglin v. Massanari*, 39 Fed. Appx. 777, 781 (3d Cir. 2002) (new evidence that does not relate to the time period considered by ALJ is not material).

Since Plaintiff provides no additional information about the additional medical documents except to say that they "did not exist at the time of the earlier decision," it is unclear whether they relate to the time period considered by the ALJ or if they describe a later-acquired disability or a subsequent deterioration of one of Plaintiff's physical or mental impairments. Moreover, simply stating the medical records "did not exist at the time of the earlier decision" with no further information falls short of demonstrating good cause for not having incorporated them into the original record. In fact, by merely stating the documents "did not exist," Plaintiff makes it seem more likely than not that these medical records are based on appointments Plaintiff had subsequent to the time period at issue and thus, would not qualify as "new evidence."

Finally, the fact that Plaintiff was awarded disability insurance benefits on her most recent application does not affect my decision. That the Social Security Administration reached different decisions at different times under different circumstances does not mean the ALJ's June 28, 2006

9

decision is not supported by substantial evidence. To the contrary, based on my review of the record as a whole, I find substantive evidence exists to support all of the ALJ's findings set forth in his June 28, 2006 determination.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Mary A. Yohe, | ) |
| | ) |
| Plaintiff, | ) |
| -vs- | ) |
| | ) Civil Action No. 07-301 |
| Joanne B. Barnhart, Commissioner | ) |
| of Social Security, | ) |
| | ) |
| Defendant. | ) |

AMBROSE, Chief District Judge.

## **ORDER**

AND now, this 8th day of February, 2008, for the reasons set forth in the accompanying Opinion, it is hereby ordered that Plaintiff's Motion for Summary Judgment [Doc. No. 7] is denied and Defendant's Motion for Summary Judgment [Doc. No. 9] is granted.

BY THE COURT:

s/ Donetta W. Ambrose
Donetta W. Ambrose,
Chief U.S. District Judge